Mr. Pickett, can you get that filing to us within a week? Yes sir. Thank you. Okay, Certain Underwriters at Lloyd's v. Empress Marine Ventures, Mr. Green. Good morning, Your Honors. Good morning. Marlon Green on behalf of Certain Underwriters, and may it please the Court, I will go directly to the direct question that the Court asked. Mr. Pickett, you think we have jurisdiction at least under 1292A3? Yes sir. We do believe that this court has jurisdiction under that particular statute, and here's why we believe that. And we don't have a final order under 1291, because we didn't have a ruling on the counterclaim. Yes, Judge. There's no ruling on the counterclaim. In 1292A3, we believe that the court has jurisdiction, and the case law from the Eleventh Circuit supports our position on that. The Beluga case, Bradford Marine, and other cases that the court actually cited in the notice to us last week, established that we have jurisdiction, that this court has jurisdiction on that. I just would point to Beluga, Beluga came down differently because the claim at issue wasn't a maritime claim, that was an issue. We believe that this court has jurisdiction because all the liabilities, the rights and responsibilities between these parties was established by the court's ruling on the motion of summary judgment. And thereafter, even, obviously the court, even in the summary judgment motion itself in the order, says things like, going to close the case, essentially directs the defendant to issue a proposed final order, and even goes and activates essentially Rule 54 with respect to any claim or motion for fees at that time. So, to the extent that the ruling was on the Eleventh Circuit precedent on these rulings, going back to the Fifth Circuit, the 1292A3, we believe this court has jurisdiction. Okay. Let's get to the issues. Yes, sir. Now, with respect to the first issue we would like to address, Judge, is the navigational limitation provision in the policy. Can I ask you a question? Yes, sir. Your count one, the declaratory relief count in your complaint, did you raise anything regarding navigational limits? Your Honor, at the time of the initial filing, no, it was not raised. Right. The only, the first time it really came up was in the response, was in the summary judgment or the response to the summary judgment. The first time it came up, yes, Your Honor, and then I'm not, obviously, I own the case once I take it over. Right. Okay. I'm not, let me be clear. Oh, no, no, not at all. I'm not casting blame. I understand how busy attorneys are. No one's casting any blame here. No, no, absolutely. That is a question. Were you first on the case at summary judgment and someone else handled it at the MTD? Yes. Or did you handle the MTD also? No. I was brought into the case, I believe, in August of 22, the motion was dismissed and all these, the original summary judgment motion was filed. We came in and filed the second summary judgment motion and moved forward getting ready for trial. Which is why everything is brilliant after that point. Right. Absolutely. But I guess where I'm getting and establishing that is, where that's the case, how can we say that the district court erred in granting summary judgment on that issue against you where that claim was never actually raised below and your opposing counsel points out, hey, this whole thing is waived in part because it had never been raised at any point until we got to the summary judgment phase? Well, I think the case law supports the ability to raise these issues at summary judgment. I'm not sure that's the case. Here's one of our cases. It's not cited by any of the parties, but it's sort of a general proposition of law where we've essentially said, well, let me read it. The Supreme Court has mandated liberal pleadings. The standard, however, does not afford plaintiffs, which you are the plaintiff here, with an opportunity to raise new claims at the summary judgment stage. Indeed, simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. Efficiency and judicial economy require that the liberal pleading standards are imapplicable after discovery has commenced. At summary judgment, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in Rule 15. This one's Gilmore, but I'm sure that's right. Duke says that too. My concern is we have to say the district court erred here, and that's a big deal. We take that seriously, as I think Chief Judge Pryor just intimated in the last oral argument. District judges have tough jobs. They're having to sort out stuff with a lot of imperfection in the system. One of those is if he denies it, and it's sort of a general denial here, and one of the arguments brought to him was this is all waived because it hasn't been brought up before, how can we say that's error? Judge said error because let's go back to the initial filing. The initial filing included the policy. I know, but you can't just say declaratory judgment, there's a violation of the policy, attach policy, and that be enough. More than that, you actually did ... I know it wasn't you. Your client, the folks who were representing your client at the time, did identify a provision of the contract that was violated, just a different one from the navigational limit one that's being litigated here. Certainly, and I appreciate the fact that you don't want to be in judicial surprise or in a situation where you're telling the court, hey, you know ... Where I feel for a district court judge who then says, hey, I'm looking at the complaint here, this isn't the claim brought, they're saying this is waived, and so you can't do this through summary judgment, and so I'm granting judgment the other side on this claim. Respectfully, Judge Luck, I understand your position on that, but I note that the district court didn't even put that in the final order with respect to the summary judgment motion. They didn't raise that as an issue with respect to waiver. Well, I think they did. I think the waiver is all over this, both in brief here and there. Now, I agree with you, they argued waiver in a bunch of different contexts, but one of those was, hey, this is the first time this has been brought up. The first time we've ever heard of this is in summary judgment. I mean, that's the Gilmore ... They didn't cite Gilmore, they didn't read it, the quote, but that's what one of the arguments they're raising, and the district court granted judgment on that, and so I just ... That's where I'm having trouble with the navigational limits claim. Maybe we can talk about the damages claim, where I think ... Can I ask a follow-up question before we get off of that? I think you could perhaps read it both ways, but my understanding of the waiver argument was, and I'll be happy to ask your friend on the other side about this, from a party, you didn't tell us about this, so you waived it, rather than you didn't tell the court about it, so you waived it under those kinds of rules. Do you see those as two separate issues? I do see those as two separate issues, especially when you talk about the position that they're taking that these releases, that the court is aware of, these 13 separate releases that actually preserved issues on the liability, and didn't acknowledge liability, it said it was preserved with respect to liability. In that particular position, I absolutely believe that these are two different issues. The other side didn't raise Gilmore, or the other related cases, right? They raised, I think, New York contract law, and insurance law cases, so can you waive a waiver argument? In this particular instance, I don't think we did, because of the preservation under those different ... The issuances of those partial releases, so I don't think we really waived any of our defenses, and I think we actually cite to that in our papers. Okay, we can move on. Judge Taluk, do you have anything to add? Where I think you are on stronger ground, again, at least I'm only speaking for myself, is on the damages part of things, so can you argue about that? Absolutely. The damages parts of things, there was this, what I call, Herculean leap from the district court, from the motion of summary judgment, to the issuance of a damages order that essentially inherited everything that was submitted by the defendant without any testimony, without any record of . . . Empress Marine stated in its statement of material facts that repair costs were over $9.3 million, and it appeared to me that underwriters failed to respond to that statement. Can you help me with that? At what stage, Judge, I want to make sure I'm clear with respect to . . . There was a statement of material facts filed by Empress Marine that repair costs were over $9.3 million, and underwriters failed to respond to it. Again, when I'm trying to sort through the record to appreciate the district court and its position about what's in dispute or not, that seems relevant. I would say to you, Chief Judge Pryor, that though that was not within the court's framework of its ultimate order on the summary judgment motion, that's . . . I know, but I'm trying to figure out what really the district court thought was in dispute. Well, the district . . . There's a pretrial stipulation with an itemized list of expenses, which is where the district court appears to have gotten its $9.76. If I may, Judge, really . . . I couldn't find any expenses underwriters argued in its brief were unrelated to the repair. Judge, just really quickly, that was a unilateral pretrial stipulation. That's first and foremost. As a result, that was not an admission or an acquiescence to their numbers whatsoever. In fact, we filed our own unilateral pretrial stipulation. To the extent that there's reliance upon a pretrial stipulation for establishing the damages, that was not something that was agreed upon. I find it ironic . . . What evidence did you put forward to say . . . to contest it? We actually put forth evidence with regard to . . . with respect to the . . . Are we talking about summary judgment stage? I want to make sure we're clear. You have an expert who determined that the repair cost exceeded $9.8 million, right? Actually, we do not have that. That may be on their end of the case. We don't have an expert to say that because our expert never came to a final conclusion, at least for this record for the court, that it was at $9.9 million. That never was something that the court relied upon. I think the issue is . . . you hit on the issue and I know I'm running close to my time here. The fact that the district court did not have any record evidence to establish the basis for the damages claims is the inherent problem in here. We gave the district court an opportunity to rectify that by going and seeking reconsideration on that. Your number was in the $3 million range, right? It was. What was your proof for that? We actually paid up to $3 million when . . . $3.5 million paid. That was an active, ongoing claim. We paid up to $3.5 million. That number was actually a number that was actually paid out with respect to understanding what was going to happen next, whether there was going to be additional testimony, what we thought, from experts talking about what would be the value, reasonable value of the claim. The district court determined that since the actual cost of repairs in its view was the $9.5 or whatever it was, that that was what you were responsible for under the contract. They didn't give you an opportunity to say what you thought the damages should have been? Correct. It runs counter to testimony from their own witnesses that are saying that at least $1.4 million of those dollars were unrelated to the actual claim. That's from their own experts.  Let's hear from the other side. Thank you, Norton. Good morning. May it please the Court, Clay Norton on behalf of Empress Marine Ventures. Can we get to the waiver part first? Where below at any point did you let the district court know, hey, this navigational thing really has never come up before and we don't think it applies on the merits, but hey, this whole thing has been waived. Where did you say that? We responded to the waiver issue directly when it was first raised in the amended motion for summary judgment, which by the way was seven years after the incident. So seven years after the incident occurred that the claim is based on, suddenly the underwriters have developed a new defense. Can I ask you something? Yes. I'm looking at docket entry 104 at page 10, which is your response to the summary judgment motion. It says, further, as more fully briefed above, plaintiff waived this basis for denial because it was not timely raised and plaintiff has been aware of all circumstances surrounding the vessels grounding in the Dominican Republic since 2016. Is that what you're referring to? Exactly. Yes. Okay. If that breach theory wasn't in the case, can we talk about damages? Yes, Your Honor. So on the issue of damages, the underwriters put forth their theory of the case, which was that we were only entitled to the reasonable value and not to the actual amounts that were spent in repairing the vessel. Are you reading into the contract or did the district court at your behest read into the contract either incurred or actually incurred or actual as part of the contractual language? In other words, for the district court to be right, it'd have to read the contract that way. Well, the new for old clause in the- Do you agree with me, first of all? Do I agree that- That the district court read the new for old clause as either actual or incurred? Yes, I do. I think the court correctly determined- Is that right? That- I'm sorry? That reading it, the reading the new for old clause that way. Is that correct? Yes, it is. Yes, it is. What about, you know, it seems to me that if you, you know, we read contracts as a whole. That's true in New York. It's true for Florida. You know, the contract principles aren't all that different between the states. That if you read other provisions of the contract, it seemed to have provisions that where it meant to say incurred or actual, it did so. And I'll give you just a couple of examples that I saw in reading the contract. So, for example, if you look down at the rundown clause, which is I think the same page or right after, it says that Lloyd's, quote, will also pay the cost thereby incurred or paid with regard to that. And then a little bit later, on page 31 of the contract, this says- It's a not. But it says, quote, that the company, quote, shall not be liable here under for any expenses or combined expenses incurred in excess of what's provided for in the policy. The fact that incurred does not show up in the new for all provision and it simply just says no more than the cost of repair indicate that cost of repair is an objective thing and not subjective. In other words, something cost to repair one thing. Now, evidence of that certainly may be what you paid. But you don't automatically get what you paid just because you paid for it because you happen to go to, you know, Mercedes Benz or Porsche to correct it as opposed to the dude down the street. Well, Your Honor, the way that you get to reasonable repair costs, according to the case law in New York that we have cited, says that you get there if you haven't already incurred the expense. If there is an actual expense that you have already incurred, then the insurance company- You're talking about in general with regard to UCC sort of stuff. We have a specific contract here. And so the contract here, I'm asking as a matter of contract language, how can we say it means incurred where the provision seems to suggest that when it's incurred, it says that but says no such thing in the relevant provisions of this contract? Well, what the new for all clause says is that you can- that the underwriter will indemnify the insured on a actual cost basis or- It says no such thing about actual. You just read in actual. It says- it says- what it says is if there's damage or loss, you know, new for old, except for sales and some other stuff, no more than the cost of repair or reasonable value. Now, I happen to agree with the district court that reasonable value is like loss situations, not damage situations. So I think I agree with you on that. But just looking at cost of repair, I don't see how we say it's actual or incurred where the contract seems to tell us when it wants to do that, then it says to do that. Well, by separating it with that or, it's cost of repair or a reasonable value.  So clearly they have a different- So I have a hypothetical that maybe will help me understand your argument better. Suppose- suppose a client gets a really great bargain and they get their ship repaired for $1 million, but the reasonable cost of repair was $4  Do they get $1 million or $4 million under this contract? They get one because it's an indemnity contract. So you are indemnified. You pay and then you are reimbursed. And in this case, that's exactly what happened. Our client actually paid out the amount that the district court awarded here. But if it- But aren't you- And no windfall. But if it hadn't been paid, if it hadn't paid, then you would still be entitled to whatever a reasonable value was. That's the point of the disjunctive. That's your argument.  Yeah. That's why there is that different- the ability to either value it at what you paid or- On the front end, what of the disjunctive is when you actually do it, although it doesn't use the word actual, the cost of repair or reasonable value- Correct. Where you haven't incurred the cost. That's your interpretation. That's our interpretation. Why wouldn't we read it as the lower of the two rather than if you quickly get the money out of the door, then you're entitled to more? Well, under New York law and generally, the court can look at an ambiguous statement in an insurance contract and look at parole evidence if there is any. There isn't any. In the absence of any other indication of what the party's agreement is, the court must side with the insured. If there's any ambiguity, the benefit of the doubt- That's a lot of ifs there. If it's ambiguous, and I think the court found it's not, and I think you even argued it's not, and then that's if there's no dispute on parole evidence that's out there. Here there was no summary judgment was granted. There was no opportunity for an evidentiary hearing on what parole evidence is. Only then do you get to the default you're talking about under New York law. Correct. We don't think it's ambiguous. What we think, but if there is a question as to which applies, then that creates some sort of ambiguity. In that case, then the court would still come to the same exact conclusion because the benefit of the doubt goes to the insured. What we really have is the difference in reading this disjunctive clause is whether it's a no more than or the lesser of, and yours is which? If the insurance policy intended to say the lesser of, it would have included the lesser of, and instead it says or, and the first item in that list of two things, two possible outcomes, is the actual cost, or then there's a second item, which is the reasonable value. But it's no more than this or this. Correct. How is it not no more than any of these two options? As the court said, you could put a period right after the first option and the sentence would be complete. It would be a usable sentence. Your position is that no more than cost of repair, even if a reasonable value is higher, makes sense of both clauses?  Yes. And there's no superfluity in that circumstance? That's correct, Your Honor, yes. Why is there not, even under your reading of the contract, you still only get that which is related to the expenses for the damage caused, right? That's correct, Your Honor. So I think we can all agree on that. That can't be really a dispute. And here, is there not evidence in the record from some portion that some amount of the money, the 9.7, is for things that aren't associated with the damage here? There is evidence in the record, but the overwhelming weight of the evidence The problem is the rest of that sentence doesn't allow itself a summary judgment. Because if there is evidence of what I just said, then how could the district court possibly have awarded the 9.7 million? Even if you were entitled to a lot and more than they say, how could it have awarded the 9.7 million if there is evidence in the record, whatever weight that evidence should get, that some of these expenses that were part of the 9.7 are not related to the damage associated with the grounding and the subsequent incidents? Well, there's evidence that's relied on by the underwriters to say this. And it's in a deposition of the accountant, Mr. Navarro. And in that deposition, he is presented as a representative of the company to opine on the amount that was spent on this. And he goes through and says about 1.4 was related to other stuff, right? And then he goes on to say, and the total amount that we paid for everything related to the incident is the amount the district court awarded, the 9.8 number. There's a dispute. No, I don't think there's a dispute. I think he confirms the amount that is owed is this amount. Even after saying that 1.4 of it is related to something else? I don't think that's the exact testimony. I think he says there were other items that was approximately that, 1.4, but what the amount that we actually paid was this 9.8. I believe that's what the testimony said. But more importantly, all of these numbers are in the record. The court had them available before him, and there was no contrary evidence. There was no evidence whatsoever- But if the evidence he had before him showed, at least in the light most favorable against you, because it's your summary judgment that was granted on damages, but if the light most favorable against you that some of the expenses were not related, then isn't he required to have a trial on that issue? I don't think so in this case because the testimony was There were other expenses, there was approximately 1.4, but the amount that we spent repairing the vessel was the 9.8, the amount the court awarded- You're saying the total amount of money spent was 9.8 plus 1.4, rather than- I'm sorry, the total amounts that was spent on the vessel while it was in the yard? Yes, but the total amount spent to repair the vessel for its damages was this 9.8. I believe that's what the testimony says that's in the record. I have a question. I want to make sure. I had a hard time understanding something on the last page of your brief. It says, EMV did not prove a breach of the policy by underwriters and failed to establish damages with reasonable certainty. The record lacks support for EMV's damages claim. That's a Scrivener's error, Your Honor. I think we were- There's nothing I'm missing there. We were addressing that issue, and I think it just remained in the final draft. My counterclaim hasn't been decided, right? No, the counterclaim has not been decided, and I think- Okay, just wanted to make sure of that. I have a question related to what I was talking about with your friend on the other side. Do you think that there are two kinds of waiver? One is from the perspective of what you can bring before the court at a certain time, and one is with respect to New York contract law about when you can bring something to the attention of your contracting partner. Do you see those as different or the same? Well, I think we talked about both of them. I think we raised both of these things. And under New York law, we even raised two different types of waiver. One waiver related to the damages issue and the fact that there was no objection ever raised despite underwriters being in the yard and observing all these things. When did you raise the argument about the other party's authority to bring something to the court at summary judgment as opposed to the New York waiver arguments that you made? I think that was raised in response to the amended motion for summary judgment. I think Judge Luck pointed it out. I think it's at Documentary 104. But the waiver issue, I mean, it goes to all of the underwriters' claims because there was no objection on coverage for something like seven years and no reservation of rights. Well, my understanding from the record was that there was a general reservation of rights and that New York law reads that pretty broadly. Broadly maybe, more broadly maybe than I would, but that New York law reads that pretty broadly. I don't think there was any indication that there was a coverage issue until the lawsuit was filed. And there at least was as to damages. I mean, at least there was as to damages. Well, as to damages, the underwriters had people in the yard observing all of the work. I know, but I may go to waiver, but the reservation of rights clearly covered. Even if you, and I happen to agree with Judge Grant's reading of New York law on reservation of rights, but even if you say it didn't go to coverage issues, certainly they said we're paying in their reservation of rights, we're paying subject to determining the quantum of what the damages are. I think the only reservation of rights in the entire case is part of these partial payments that were made, and it's a contract or it's an agreement that was signed after a partial payment was made by the underwriters to the insured. It's saying we're paying you, but we're reserving our right to challenge the amount. Related to the amount that they've paid, right? And it's also governed by Florida law. Those agreements are governed by Florida law, not New York law, so it's a narrower interpretation. And what those are doing, at least in our reading, is that all that reserves are rights related to that one payment that they're making. There was never an issue about what the cost of the repairs were. There was no claim that they were excessive. There was no claim that we should get more bids. There was no claim that it was badly managed. All things which could have been rectified had they been raised early, which resulted in prejudice to our client by not being able to rectify those things, if they exist. There's been no evidence. I just want to get your response to one statement of law from the Second Circuit. To establish waiver under New York law, one must show that the party charged with the waiver relinquished a right with both knowledge of the existence of the right and an intention to relinquish it. Do you think that's an accurate statement of New York law? Well, I think that's one statement of it, but there's also an implied waiver that is also talked about in our brief, which involves, by action or by inaction, you can waive and permanently waive a right, including insurance companies' rights to coverage defenses. And we believe that's what's happened in this case. They either did it by failing to raise certain issues. And they also, by the way, did it through communications, like offering to pay $7 million and just to close- I think I understand, Mr. Norton. Thank you. We have your case. We're gonna hear five minutes of rebuttal from Mr. Green. Thank you very much. Thank you. Obviously, really briefly, I just want to address a couple of things that were representations made just now. Regarding the question that Judge Luck had related to what the evidence was with respect to the $1.4 million, the $1.4 million was apparently included in their damages analysis for the total. So, with regard to Judge Grant's inquiry, I think the record is clear that the $1.4 would not be in addition to, it would be subtracting from that final- What was the deposition testimony? That relies on that. That comes from the stipulation of facts that you're talking about, or your statement of contested facts. But that comes from the deposition testimony. What did the deposition testimony say? Deposition testimony said the following. I'm going to try to be brief in this. Please, just summarize for me. Just says, when go down these various line items, the witness testified that that's not related to this claim. That's actually related to another claim on another vote. And the line items were those that were the bills that were sent to you to be part of the $9.7 million? Correct. And those were specifically talked about, and that's why we used to be so clear and had a clear number. That's the one point for me. Did your expert, I mean, because there's, and when I say expert, at some point, Stembridge becomes involved, right? Correct. Did he give a number as to what he thought the reasonable cost of repair should be? My recollection of that is that he did, and I think his number was closer to like 4.5 or something like that. OK, and that was submitted to the district court as part of what a reasonable damage expense should have been, the cost of repair should have been? The district court at the time that the, I guess, let me do that. That's not a hard question. No, I was just trying to make sure I understood at what term and time, whether it was submitted to the district court. And it was submitted to the district court, yes. So it was part of the summary judgment record? I believe it was a part of the summary judgment record, and it definitely was a part of most of the record on reconsideration as well. Is that enough to create a genuine issue of material fact? Assuming we agree with your interpretation of the contract that it's not actual, is that not enough to create a genuine issue of fact about what the damages should have been or what the reasonable repair cost should be? Absolutely. I believe that it is enough to create a genuine issue of material fact. And I would like to point out to the court that one thing that's lost here is that this policy limit is $9.5 million. So the district court in entering an order that exceeds the policy limit was outside literally of its authority at that particular point in time because this wasn't a case of bad faith. This is a case of a straightforward breach of contract sent to the declaratory judgment action. So it exceeded, the final adjustment exceeded the policy limit, which only exceeds it by way of including that $1.4 million that shouldn't have been included in the first instance. Now, regarding the waiver issue, I just want to touch on that really, really briefly. Judge Grant cited a piece of the New York law that we believe applies in the language that they're in. But it also in that provides that prejudice is a key component. And in this particular space, there is no evidence of prejudice because the plaintiff, I'm sorry, the defendant was going to repair the vessel without regard to whether the coverage decisions. And also noting that those reservations in those different payments that were made, those 13 different payments that were made, reservations in that point gave them notice at the time that there was going to be some potential issues with respect to the damages. And to that end, there's testimony in this record by Neil McLaurin. Mr. McLaurin was the surveyor that was hired by underwriters. And their surveyor testified that everything that they submitted wasn't always paid. So through the lifeblood of the case, there was challenges. So say, for instance, they submitted an invoice for payment for $85,000. They may have only got paid for 50 of it. What about the argument that even if you reserved your rights with respect to the specific damages, you didn't do so with respect to the navigational limits? Well, in this particular case, I believe the first jump off point is that I don't know that the navigational limits warranty endorsement, given the timing of these issues and in the timing of this incident, I don't know and I don't believe that the navigational warranty was actually in place or was extended at the time of the navigational impact. Right. I mean, speaking only for myself, it looks like that was the case. But what about the fact that you didn't raise that until later and you didn't necessarily reserve the right to question that? You reserved the right to question the amount of damages, I think is at least one reading of the interactions. That is one reading of it. But with regard to payment says that we don't admit liability as to any aspect of it. It doesn't say we're going to just limit our liability to this or focus on this particular partial payment release. It actually says that we reserve on liability. And liability is a different thing. Obviously, we all know versus damages. So it's not just limited to the damages analysis. We're reserving on those things that were or not related to the cluster.  Yes, sir. Fox, got you. Yep. Thank you. Thank you all. Appreciate your time.